Our next case for argument is 22-1160 IDEAHUB v. Unified Patents. Mr. Norose, please proceed. Thank you, Your Honors, and may it please the Court. The Board's decision below suffers from error in three respects. Firstly, the Board's decision as to the original claims and its finding of unpatentability relies on a new so-called third theory as to limitation 1.10 that was never presented in the petition. In addition, the evidence that the Board relied on with respect to that third theory does not actually demonstrate the limitation that requires using mathematical expressions, and furthermore, the Board's finding that the proposed amended claims suffer from a lack of written description as to the requirement that was already set forth in the original claims and limitation 1.1 is inconsistent with both the intrinsic evidence and the Board's own basis for finding the claims unpatentable. So I'd like to address each of those in turn unless the Court would like me to pick a different order. I'd like you to start with written description since we have a written description issue. The Board's order pointed out that the disputed claim limitation 1.1, which requires determining intramode, determining an intramode for a neighboring block of the current block, was already recited in the original application as part of the original claims, and it was part of the preliminary amendment, which necessarily puts it as... The Board didn't rely on that though, right? Just to be clear, the Board, that's, the Board didn't, did the Board know that? Did the Board know that? Well, it's part of the prosecution. Where did the Board rely on it? You said, you started by saying the Board, so where did they do that? Show me in their opinion. I'm sorry, Your Honor, I don't think I said that the Board relied on the fact that that limitation was part of the original application, just to be clear. I'm pointing out that this Court's order... We are, oh yeah, we're aware of the Board, so yeah, you did say Board, so I thought you were saying the Board relied on that and nonetheless found there wasn't new description support, but they weren't aware of it, correct? They did not expressly discuss it. Did you argue that to them? Or to us? Or to us? We, we did not argue it in our briefing. To the Board or to us, right? I don't believe it was wouldn't we normally find stuff like that forfeited? I think that's at the Court's discretion, certainly. In this instance, it's part of the intrinsic evidence, it's part of the prosecution history, but I will say that I don't think our argument, I think that's certainly a very strong reason why the written description support is there and there's plenty of case law from this Court that says so, but I don't think that that's the only basis by which that finding can be reached by this Court. The written description abundantly describes that determining an intramode for a neighboring block of a current block can be done by way of determining the directionality, and in fact, I think what really stands out from the board found that determining the directionality of a neighboring block requires determining the intramode of a neighboring block, and that's at Appendix 41 to 42. And so it's necessarily the case that since the written description teaches determining the directionality of a neighboring block, it also must teach that the inventors have possession of the concept of determining directionality. What is your best part of the disclosure of the 849 patent that you rely on for the teaching of determining the directionality of a neighboring block or determining an intramode of a neighboring block? What part do you think best supports your position? Yes, Your Honor, so I have specific sites for you, but I will say at the outset that it is the patent does teach determining the directionality of a neighboring block. And so, for instance, some passages of the patent that teach that, Column 6, lines 19 to 23, that's at Appendix 69. At Appendix 70, Column 8, lines 36 to 39. Okay, this is all directionality, correct? You're just pointing us to directionality. Correct. And you're saying then if the patent discloses directionality, inherently a skilled artisan would know it also discloses intramode. That's right, Your Honor. Is directionality a characteristic of intramode? Of the different, there's eight or nine intramodes in the specification. Is directionality a characteristic of that, of the one through nine intramodes? So, it's a little bit of a complicated answer. There are eight directional intramodes, and there's one DC. And of no directionality. Correct. And then the, I'm sorry. No, go ahead. And then the intramode, or the intramode is used further on in the process to determine the directionality. And that is, you can look at the board's decision at Appendix 41 to 42, where the board itself recognizes that. That's a part of the well-known process, for example, in H.264 of determining the directionality of a neighboring block of a current block, you first determine the intramode. And one of the ways in which you get the intramode is based on the directional characteristic or the directional mode of that block. But where did the board make this finding that in order to determine directionality, you have to first determine intramode? So, Your Honor, we discussed this in our blue brief at page 44. And again, we cite to Appendix 41 to 42 in the board's decision. Board decision, 41 to 42. Okay. What exact language are you talking about? Yes, Your Honor. It says, it's a long quote that the board has obtained from Dr. Friedman's testimony. And he says directionality is a concept. Are you looking, just make sure where we're at. Are you on Appendix 41? Yes, I am, Your Honor. Okay. We're in that block quote down at the bottom. Yes, Your Honor. Okay. And this is where they just credited. They said it's particularly well-reasoned and persuasive. So, which part of this block quote, about what line are you looking at? So, for example, and it literally starts with the phrase, for example, it's about the fourth line of the block quote. Okay. The 240 application describes that directionality of neighboring blocks is estimated from the neighboring blocks that have already been reconstructed, while the intramode is selected for the current block for purposes of reconstructing that block. It doesn't say, that sentence you just cited doesn't say that you determined the directionality based on the intramode. I mean, this expert opinion you're citing is from the other side, isn't it? Explaining why intramode and directionality aren't the same thing. And the board credited that. Why isn't that substantial evidence that they're not the same thing? Therefore, maybe directionality is disclosed, but the full intramode is not, which is what the board's found. I'm just curious why you're citing the expert for your other side when he's saying they're not the same thing. Yes, Your Honor. And the reason I'm doing that is because the way that the expert for the other side makes that point is actually by saying, and to Judge Stoll's point, I'd like to continue to show further where it all comes together. But the expert for the other side is actually saying you perform directionality after you've gone to intramode. And therefore, according to his And for instance, he goes on to say at the bottom of Appendix 41, phrased differently in the 240 application, directionality is a concept that is evaluated after performance of intraprediction, i.e. after reconstruction, whereas the intramode is a concept used during performance of intraprediction. Why does that suggest that this patent has a written description for intramode or just acknowledges that a skilled artisan would know that intramode is in the prior art, but all this patent is disclosing is directionality? So written description, Your Honor, goes to the question of possession of the concept at the time of the invention. And the claim, well, we have the evidence of the original claim, which the court itself has brought up. But aside from that, we know that the claim recites intramode as issue. And we know that the specification discusses all these teachings about determining directionality. And we know that the patent further teaches the well-known techniques of H.264, which, according to the testimony of Unified Zone Expert, required determining intramode before getting the directionality. And so all that is evidence that the inventors were in possession of the idea of the intramode. And I think- But doesn't the expert say that the intramode number of the neighboring blocks is no longer pertinent after it's reconstructed in the same paragraph, which I think is at 4208 of the appendix, paragraph 68. It's the same paragraph the quote's taken from. 4208 of the appendix? Just think about what I'm saying. Doesn't the Unified Expert also say that the intramode of the number of neighboring blocks is no longer pertinent after it's reconstructed? Well, taking your guidance and just accepting for the moment on assumption that that's what the expert says, I don't think that would affect our argument or the issue, Your Honor, because the question is whether there's evidence to support the written description, the fact that the inventors were in possession of the idea of intramode is determined before you get the directionality. So let me just be clear because it feels like you're arguing something different now than you argued to the board and the board-based decision. You're just arguing that because intramode was well-known in the art and that you would have to do that before you get to directionality that the patent had a written description for that. But if you read on on paragraph 42, the board's addressing, and this stuff is very difficult for me, but the board's is discussing specifically where you pointed out intramode is disclosed and it's talking about variable i and they're saying that doesn't disclose intramode. And so that's a different argument that variable i discloses intramode than what you seem to suggest that somebody would have to know an intramode to just talk about directionality. Is there substantial evidence for whether i discloses intramode or not or just directionality? Well, yes, Your Honor. I think it's what we point out in our briefing is that the board necessarily found that determining the directionality does satisfy determining an intramode because that's the basis for its decision that limitation 1.1 is unpatentable in view of Kaleva. That's the entire argument that Unified's petition relied on to invalidate that aspect of the original. But that was looking at the prior art reference where maybe intramode and directionality were expressed in different ways. But that was not the argument that Unified presented. Unified said that they are the same. And so as to the issue of whether we brought up this argument about well known in the art and intramode precedes directionality, we didn't really have an opportunity to do that because the board said in its preliminary guidance that it was satisfied as to written description. And so we didn't know that there's a further issue that we need to go beyond the arguments that we had already presented to further explain why it would be erroneous for the board to turn around and contradict its prior finding and its preliminary guidance on the written. You didn't get any further reply when they moved to say there's no written description? You didn't get a reply to that? We did, Your Honor. But we were able to present an argument and we did present argument and we presented evidence consistent with what we had said before. We did not know that the board had a doubt on this issue. In fact, they had told us otherwise in their preliminary guidance. So I think if we had known, in fact, we could have also amended the claim again to just simply recite... So here's the problem. The problem is this inherency argument you're making is a fact question. Inherency is a question of fact. Board did not rule on it. But it seems like you're making now, though you didn't make it explanation for why you couldn't make it to the board. And that's relevant to forfeiture. We determine whether or not arguments are forfeited in part based on the equities involved. So it seems to me that the answer would be if your argument has some potential merit, the answer would be we vacate and remand for the board to ascertain whether or not this inherency argument is a valid one or not. But it's just awkward. It feels awkward for me. I'm with Judge Hughes. Even though this is kind of in my background a little bit, I found this very hard to figure out on the technology. And so I'm not super comfortable trying to resolve this inherency question in the first instance that you're raising. So under those circumstances, I mean, would you be advocating for us to vacate and remand under those circumstances for the board to consider that argument? I think, Your Honor, at a minimum, we would ask for remand under those circumstances. But I would also point again to our primary argument, which is that the board's finding of lack of written description cannot be reconciled with its finding of unpatentability as to the same limitation. They rest on diametrically opposite positions. In the instance of unpatentability, the position is that directionality is the same as intramode. In the instance of written description, it's that they're not. I have one more question for you. I'm just trying to work this written description idea through in my head. And in particular, what effect, if any, the fact that this limitation was present in the originally, well, not the originally filed claims, but the preliminary amendment filed the same day. And the reason, what I'm trying to think about is this is a continuation, not a CIP. So you're claiming priority to everything that was in the originally filed application that you're claiming priority for. And this language, which was added by preliminary amendment, was not present there. But these are these amended claims that you're substituting. I just don't know, am I supposed to be focused on what was part of the original filed application here or what was part of the originally filed application that you claim priority to as a continuation? So this is going precisely to the argument we asked you to come to court to discuss, because it's a different argument than what's in your briefs. And it is, does that preliminary amendment obviate your need to establish anything for written description because it was there on the day of this application? Or in the context of these proceedings, do I consider the fact that you're not claiming priority to that date, but an earlier application through a continuation and not CIP? And do you therefore have to be able to prove that you had written description support in that earlier application? I don't know the answer. I'm just genuinely asking you. Yes, your honor. I think the answer is that at a minimum, at least as of the date of the priority date of the original application, there is written description support. What did the board find when it found there wasn't written description support? It found there wasn't written description support in the 849 package, right? Correct. Okay, so isn't that what we should be looking at, which is the continuation, right? Yes, your honor. Okay, I just wanted to make sure, because I thought you just answered the question that was asked to you, going back even further to the original patent. No, your honor. I'm speaking to the fact that 37 CFR 1.115A1, which the court cited, says that the in this instance, then that would give... It's just to the 849 patent. It doesn't go back to anything earlier than the 849. The application, I think it's 240, if I remember the number correctly, is the application that issued is the 849 patent, right? This particular item of evidence would support written description as of the date of the 849 patent. That's right. We have other arguments and evidence that we believe demonstrate written description support as of the earliest priority date. But the board didn't consider that, I don't think. Didn't the board, in the board's finding that there was no written description, just rested on the 849 package, right? I believe that's... There's no written description support in the 849 package. I believe, as I understand the board's decision, yes. Okay, let me ask a follow-up question. When you introduce a substitute claim, who has the burden on that? Yes, Your Honor. So it is the patent owner's burden to demonstrate that there is written description support. It is the petitioner's burden... And I don't understand. Is it your burden to show there's written description support for your priority date or for the date that you file this application? I don't know and I'm just trying to figure this out. I truly don't know the answer. And I don't think that that is necessarily entirely clear in the board's procedures, but I think at a written description for the priority date they are seeking. So if they say I want, you know, priority, let's say back to the original provisional, then they need to demonstrate written description for that. If they say they want a later priority date, then they can demonstrate written prescription. Well, and you say that in the patent, right? I mean, did you... This is a continuation of an application that resulted in a patent. Am I right? The 705? Yes, Your Honor. So if that's the case, do you have to prove written description support back to that date? I believe in every instance the patent owner has a choice of when they want to claim the priority date to. Are you saying that every instance the patent owner has this choice isn't that choice on the front face of the patent? I don't understand. How could... Are you saying that during these proceedings you could come in and sort of disavow that this is in a continuation or you could say some of my claims get priority and some don't? That's called a CIP to me. I don't know what a continuation means. You say everything is entitled to the priority date of the earlier one, right? That's right, Your Honor. But the situation I'm pointing to is, for example, patents claim priority to a provisional. There's often a dispute as to whether the provisional provides that support. The patent owner could say, well, at least I get priority as of the date of the non-provisional application. And so... Does the answer to this question come from Section 316, 35 U.S.C. 316, which says an amendment under this subsection may not enlarge the scope of claims of the patent or introduce new matter? I mean, doesn't that have some meaning? You have to look at the patent and see whether there is written description support in the patent. Absolutely, you have to do that. And that is our burden to show. But the enlarge the scope, for example, refers to the situation where you remove an existing limitation in the original claim. It says or introduce new matter. Or introduce new matter. And then in here, just to be clear as to what you asked for in your motion to amend, I read it at page A1458 is saying that you're relying on both the 240 application and the 920 application for written description support. And the reason is because we have to show priority all along the chain if we want to go, I'm sorry, written description. If you want to go back from it. Yes, yes. I get it. I mean, what we're talking about right here is whether you need to show written description support going back to the parent patent or just to the patented issue in this IPR, right? Isn't that what we're looking at? Well, we think that the written description is there regardless based on the arguments we present in our briefing. Assume we disagree with all of your arguments and we're only talking about this new basis for written description. What patent does it give priority? This is why I've been struggling with this argument altogether. Because you didn't raise it to the board. You didn't even argue it to us. So we have no idea what priority date you're seeking for it. What it applies to. Where these amendments go back to. I mean, what's the answer to that? Because I know you keep blurring the line and saying there's written description support nonetheless. Just assume for answering the rest of that question, we disagree with you. If the arguments you presented to the board are the only ones you have, you lose. Where do we go from there based upon these amended claims? Well, as to the issue of what priority would that original claim language provide, it would go to the 849 patent date. If it was not there in the earlier application, then the priority date, the written description would be established as of the date of the 849 patent. Did you ever ask for that or tell the board that that's all you were trying to get an amended claim for? No, Your Honor, because we believed and the board found in its preliminary guidance that there was written description support. No, but again, you're going back to stuff I told you to disregard. We're only talking about this new stuff. So this argument that we're talking about now, not only was forfeited by you, clearly, it was forfeited. You agreed. You did not raise this argument about these amendments to the board or to us in your blueberry. You have other arguments for written description. You didn't raise these. Your Honor, respectfully, I don't believe it's a forfeiture because we presented in our briefing to this court the point that the board in its preliminary guidance said that there was written description support, so we didn't have an opportunity or reason to go to this issue. I think that's why it's missing from the record below, Your Honor. Okay, so when you just, I'm at 37 CFR 42.121B, which is a motion to amend claims must include, and it says the support, and Seth, you have to set forth the support in an earlier filed disclosure for each claim for which the benefit of the filing date of the earlier filed disclosure is sought. I'm not a prosecution person, so I don't know what this really looks like in practice, how it plays out. So what does that mean? How do you satisfy that? Yes, Your Honor. So I think the key language there is for which is sought along those lines, that when you seek a particular priority date, then you need to show all the necessary predicates. How do we know what priority date you're seeking in this case with regard to these amended claims? Did you explain it somewhere? I think that's a fair question because normally in the IPR proceeding, when the petitioner brings the challenge, they state what priority date they're operating based on, and then if there's a dispute as to that, the PAN owner contradicts that, showing if there's no contradiction, then everyone operates based on the priority date that was assumed. When it comes to the amended claims, there's no particular requirement that's been set forth of specifying which priority date is being sought. I believe, though, that our goal was to establish priority going back to the earliest priority date that is claimed on the face of the patent. If you're asserting that you're seeking the earliest date on the patent, then your preliminary amendment wouldn't get you there. Maybe your other arguments get you there, but your preliminary amendment does not. Do you agree with that? Our preliminary amendment, yes, to the extent that that claim language that is shown in the preliminary amendment is not shown earlier in the file history, then that claim language would only get priority as of the date of the application in which it appeared. Okay. All right. Don't worry. We're going to please proceed. Obviously, I hope that you're going to focus on just this written description issue. Yes. Good morning, and may it please the Court. Angela Oliver on behalf of Unified Patents. I'll focus on the written description issue only, and I'll just briefly address some of the points raised at the outset of my friend's argument, and then address the Court's order of Friday, February 3rd. So first, the argument that this was a well-known concept in the prior art and that is enough to satisfy a written description. That is a completely new argument on appeal that the Board did not consider, so this Court should not consider it either. Additionally, the evidence that my opposing counsel... What about the alleged inconsistency between the obvious determination using these concepts and the amendment and the written description determination? Sure. So there is no inconsistency here in the Board's analysis or in the positions that Unified argued before the Board. So Unified did not argue that the prior art is the same as the specifications embodiment in the 240 application of 849 patent. What Unified argued was that the prior art renders the claims obvious. So that was the comparison. That's how we were talking about directionality versus intramodes. That was prior art to the claims. What's described in the specification is something different. It never determines the directionality of a neighboring block. What you're saying, just to make sure I understand, and I think what you're saying is that in the preferred embodiment section of the patent, when it describes the preferred embodiment, it actually relies on the current block's intramode to determine the intramode or something like this. It is not looking at a neighboring block in the preferred embodiment, right? Yes, very close. But you do agree that there are some statements in that specification, for example, at column 5 and column 6 and column 7, before you get to the preferred embodiment, specifics of the I equals part, that says that you're going to look at the directionality of a neighboring block in order to determine the intramode of the current block, right? It says that. So those statements, I think, are not part of the process that's claimed in the claims that have here. So those are talking about an earlier part of the general process. And first of all, to be clear, that there is no evidence that addresses this because this was not expressed. You're saying that these were not the parts I'm talking about, columns 5, 6, 7, were not actually cited to the board for written description support. That's correct. And that's why there's no expert testimony explaining this. But I will say at appendix 4208, which is the paragraph that we were discussing just a moment ago, that does say, as Chief Judge Moore pointed out, that the intramode of the neighboring block is no longer pertinent in that context. So the evidence that my prison counsel is relying on from that paragraph is not helpful because our expert explained that that piece is no longer pertinent. And so that's the most evidence we have on this, again, because it wasn't raised. Can you explain to me technically why that's not relevant? Is it because it's not part of the encoding? It's not part of the decoding? What exactly is your reasoning for why? I mean, the claims directive did the decoding part. Sure. So I think, again, if we had more evidence, I could help the court further. But I think what I can say is when a first- You can't explain why it is that the expert said it's not relevant? Oh, I can explain that. I'm sorry. Let me pull up appendix 4208. Okay. So in this paragraph, this is paragraph 68 of Dr. Friedman's declaration. And what appendix page? I'm sorry. 4208. Okay. Okay. Okay. So what he's explaining here is in the context of the 240 application of the 849 patent. The process that is used does not determine the directionality of a neighboring block because it's relying on pixel pairs of the neighboring blocks instead of the neighboring blocks. And so specifically, when he gets to this point and he says, this is the second sentence of paragraph 68, the 240 application describes directionality is estimated from the neighboring blocks that have already been reconstructed while the intramode is selected for the current block. Okay. Then after that, he says, this is likely because the neighboring blocks have already been reconstructed and thus the intramode that was used- This is the preferred embodiment right here. Yes. Okay. Yes. So he's explaining this. And I think it's helpful if the court just quickly glance at figure seven of the patent. But this doesn't necessarily explain why the statements and paragraphs are in columns five and six are irrelevant to the preferred embodiment. No, he wasn't addressing those statements in this paragraph. Okay. Okay. Okay. I'm sorry. That's okay. I think I understand this and I understand figure seven as well. Okay. The overall point is there's no inconsistency because what the embodiment is describing is not determining the directionality of an entire neighboring block. It's using different pixel pairs of multiple blocks next to it. You can see that in figure seven of the patent. And that's not what the prior art does. The prior art actually does teach determining the directionality of the entire block. So they're different concepts. It's not a directly opposite position. So that's why there's no inconsistency. Okay. Again, though, you said there's no inconsistency even though there are other parts of the patent specification that express this that you're going to look at the directionality of a neighboring block in order to determine the intermode of the current block. So we should just ignore those statements and focus instead just on the preferred embodiment? I think the claims are directed to the preferred embodiment. And I mean, I'm happy to look at the specific columns that were cited by my opposing counsel today. But again, this is a new argument on appeal. So I can't offer the court more evidence to interpret these. But I can suggest that... When you say it's a new argument on appeal, it's just the intrinsic record. It's just it's not even that long of a patent. I mean, the question is, is there written description support for claims? I mean, yes, he had an obligation to point the board to things, but this whole patent, including all 16 claims, is only 14 columns. I mean, preferred embodiment is not far away from these other statements that Judge Stoll is referring to. So I mean, I don't know. It's hard for me to imagine that when it comes to written description support in a scenario like this, we can't look at the other statements in the patent, especially when you have such a short, small patent. I could identify one of them for you. For example, column five lines 48 through 50 says, the president mentioned selection mode suitable for the current block from among a plurality of intramodes using the directionality of neighboring blocks of the current block. And respectfully, that does not describe determining the intramode of a neighboring block. That simply says, from among a plurality of intramodes using directionality of neighboring blocks. I know, but the prior art teaches looking at the directionality of a neighboring block. And the argument from your adversary is that, therefore, there's an inconsistency between the prior art validity determination and the written description determination. So how do you respond to that? I think if we could look briefly at figure seven of the patent, I think this explains clearly that the prior art and the patent are doing two very different things every time the patent refers to this directionality of the neighboring block. So figure seven, this is appendix page 61. There's a variety of figure seven for the different types of directionalities that are considered. So in figure 7a, for example, in appendix 61, you can see the current block, the 16 blank squares. There are four neighboring blocks next to this. And there are multiple pairs of pixels that are identified with these little directions. And those are the pixel pairs that are being used to analyze directionality. Okay, I have a really dumb question. In 7a, which ones are the neighboring blocks? Tell me some numbers. You said four, but I see like a lot, so I must not be getting this. I'm sorry. Each block is a four by four square. Right. So starting at the top left, I would say 0, 0 over to 0, 3 would be the first four. Oh, but those aren't a neighboring block to the current block. Oh, I'm sorry. I'm just trying to... What are the neighboring blocks? You said there are four neighboring blocks. What does that mean? Yes, so each... Neighboring to the current block? I thought you meant neighboring to the current block. Yes, and they are. So 0, 0, 0, 0 is not a neighboring block to the current block, right? So 0, 0, 0, 0 all the way down to 0, 3, 0, 3. If you take that diagonal and look at those 16 squares right there, that's one block. So the little squares aren't blocks. Got it, right. The whole big thing is a block. The four by four, yes. Is it the block? Yes. So 0, 0, in your view, is neighboring to the thing that says current block because it's part of the four by four. Right. But your view, as I understand it, is that because the Preferred Embodiment is showing figure A, actually, if it's looking at each of those portions of neighboring blocks that have little diamonds in them, that that shows that it's not actually looking at any neighboring block to determine the directionality or mode of the current block. Correct. And so therefore, when I look at the language in column five, when it says neighboring block, I'm supposed to think that it means something else or that it doesn't actually teach what it reportedly says on its face because the Preferred Embodiment shows something slightly different. Well, I think in the context of the patent, this is the only thing that's described. I understand it's the only Preferred Embodiment. You know of any cases where we say there's no written description of support because while you have more broadly described your invention in other parts of the patent, because your Preferred Embodiment is only directed to looking at not just the neighboring block, but four neighboring blocks, therefore, you don't have written description support. I think there are various claim construction cases that do follow that line of reasoning. When a party argues that something that's far beyond what's described in the specification should be included in the scope of the claims. And I don't have a case at hand. When you say far beyond, what do you mean far beyond? Like this intermode directionality are completely intertwined. I mean, this feels a little bit like a gotcha to me in terms of the written description argument. So I'm kind of not getting your far beyond comment. How is this so far beyond anything disclosed in the spec? Sure. And I'm sorry, I meant far beyond in the context of other claim construction cases. But here again, that directionality and intramode are certainly intertwined concepts. But once a neighboring block has been decoded, there is no intramode for it anymore. It only has directionality. And what this patent describes as what it's doing is not looking at even the directionality of the entire block. So let me compare just for a moment to the prior art. So what the Caleo reference does is it takes the entire block, the 16 reference, and it conducts various gradient measurements to analyze what the directionality of the entire block would be. It's an actual determination. Here what we have in this patent is just an estimation of what each of the various neighboring blocks would be based on certain pixel pairs, multiple pixel pairs from multiple neighboring blocks. And then based on that estimation, it calculates a cost of what it will anticipate to use the different intramodes for the current block. And then it cycles through those, every intramode possible picks the lowest one. You are so deep in the weeds. It may be that my other two colleagues are just so much more smart and densely educated on this than I am, but I don't have a gosh darn clue what you're talking about. Can I give you, here's what I hear you saying. Oh good. No, no, but I don't understand it. So let me see if this is close to what you're saying. But this is my, I mean, at least you have an engineering degree. I'm an English major. Are you saying that the prior art and this other stuff, it actually uses some kind of comparison between the current, the block as a whole, the 454 block as a whole and a neighboring block as a whole. But what this patent is doing is not doing that at all. It's looking at the current block and only comparing it to select pairs in the neighboring block. So that's not interdirectionality because that requires the whole block versus the whole block. That's correct. All right. Okay. I have a feeling your colleague or your friend on the other side is going to say something different, but that's what I understand you saying is that, and so is that the distinction between this patent is not teaching what the prior art does. And the prior art does show this block by block comparison. Yes. Even though this patent can be read as understanding that block by block comparison in the prior art. And that's why there's no written description support. I'm not ready to concede that second point that you could read this patent otherwise, but yes, you're correct. So the problem is, I mean, you said yes to Judge Hughes, and while I'm super excited because I actually understood a little bit of the tech when he articulated it, he was talking about what the patent teaches. If the prior art is replete with this block to block comparison, then couldn't one assume this inventor possessed that block to block comparison and light up the broader statements in the, because this is possession. This isn't teaching. This is not enablement. This is just possession. And if the prior art, as you concede, had the block to block throughout it, and here it's two things to the block, not block to block, but then there are these broader statements at other places which imply block to block, I mean, I don't know. This is possession, not enablement. So isn't this kind of good enough? No, respectfully, that's not good enough. One, that, again, is a new argument on appeal that they've raised. But also the case we cited, Rivera versus ITC, in our briefing addresses that. It says that even when concepts are well known in the art, you can use those only to explain something that's in the specification. You can't use them to fill gaps in the specification. But this is arguably in the specification. Now, I understand what you're saying about the preferred embodiment. The preferred embodiment is described, you know, with this I, and as shown in 307A, it's not comparing using a whole block to determine the directionality and intermode of the current block. But there's language repeatedly repeated multiple times in column five, six, and seven that talks about looking at a neighboring block to determine the directionality of a neighboring block to determine the current block. And you're saying that we should ignore that for reasons, I guess you've got two reasons. One is you think it's forfeited. And the second one is that you think, you've told me it's irrelevant, but I really still don't understand why it's not relevant. Sure. And I would add to what Judge Morris said, is that this is also not anticipation. Possession is not the same thing as anticipation. It's whether a person born who's filling art, reading the specification, would understand the inventor to possess this invention as claimed. And, and I think respectfully, given that there's no embodiments or no other explanation of what they meant by these isolated statements in columns five, six, and seven, then a person would not understand that they possessed this separate idea of determining the intermode of a neighboring block. Let me ask you that slightly different way. Let's assume these statements are more explicit and let's assume that they actually properly raised this argument to the board and relied on these other passages. But what if those passages said everybody would know how to do this block to block comparison. And then when they describe what we've invented and said, but we've invented, you know, this something else, but you know, everybody knows from the prior art that you can also do this other thing. Doesn't that show written description support for the fact that they have possession of this concept? I think not necessarily. It would be a closer case to be sure. But in the Rivera case, for example, that we cited, it was understood, and there was evidence in the record that it was well known in the art that these K-cups that were at issue in that case had integrated filters, but the patent at issue did not describe those. And so when the patent tried to claim. But did, but let's just assume that there were general statements about integrated filters in the prior art in that case. I mean, I assume what the problem there was, was there was no discussion whatsoever about what was in the prior art. But let's assume in that case, or in this, like in this case, let's assume these statements suggest that this is in the prior art, and we know about this in the prior art, even if it's not, as you say, the preferred embodiment. Isn't that enough for written description? I understand this would have been a whole lot clearer if they would have argued this all to the board, and if they also would have argued the amendment issue to the board, so the board could have addressed it. But let's just assume the general statements that we have here were raised, and they do show that this inventor understood this concept. Why isn't that enough? I think depending on how it's written, that may be enough in certain contexts. So if this had said something much closer to that, where there was a discussion of it being known in the art, and then an express statement that this could be done differently, that would also potentially suggest a different embodiment being present in the specification. So I think it'd be a closer case, and it may be sufficient in some circumstances. I think overall, at the end of the day, this is still a substantial evidence question. And the difficulties, and this is difficult technology, and the board considered the evidence it had before it. These passages were not raised. This was not an argument that it was well. Let's go to that forfeiture question. So in this case, nobody ever, I mean, this claim limitation was part of pretty much every claim, and it was raised as early as the preliminary amendment. And nothing throughout the original prosecution raised a written description concern with regard to this particular language. And nothing in this IPR, and well, you can't in IPR. But there's been no written description challenge of that language until we get to the substitute claim, right? So at that point in time, what were the opportunities they had to make this argument where they didn't make it, that you think we ought to conclude forfeiture? Because didn't the board give the impression that they didn't have a problem with this earlier, and in the process? That was only in preliminary guidance, which the board repeatedly says is only preliminary and is not binding. Yeah, but that preliminary guidance puts people on notice about what the board has concerns with. And given the limited page numbers you all have in these kinds of proceedings, it makes sense for the parties to focus their efforts on not the things the board says aren't relevant to it, but to focus on the things the board says are at issue. So when, you know, what was their opportunity? Because if you want, forfeiture is an equitable concept, and we can, you know, apply it or not apply it. So why do you think we should apply it here? Where did they have lots of chances or clear notice and didn't do it? Sure. Well, they had at least two opportunities. They first could have raised it in their original motion to amend, and it was not raised there. And that was prior to- Why would they have raised it in their original motion to amend? Because they're providing support for written description support for the claims they're opposing. That's part of their burden, right? Correct. And they did mention written description support in their motion to amend. Yes. You're just saying they cited the preferred part of it. Yes. And they didn't cite these passages that we're talking about. Correct. Correct. And they could have also raised it again in the revised motion to amend in direct response to Unified's 112 arguments. And I think the case- And they could have at least raised it in their briefs to us. That as well. Yes. Thank you. Well, did they not- I'm sorry. Did they not raise, like, the column five stuff at all in their briefs to us? In here, yes. But as we suggested, that's the first time on appeal. Yeah, okay. Yes. I just want to make sure. Okay. And to be clear, the cases that they cite about the board changing positions are not dispositive here. In that case, in the institution, for example, in SAS Institute, the institution decision issued a claim construction order, and then the parties never disputed it again. Okay, we're good. Thanks. Did the court want to address the 115 issue? What, huh? Rule 115. What she's talking about. Regarding the preliminary amendments. Oh, okay. Yeah, do you want her to- you don't need her to address that? No. Okay. Thank you. Your Honors, I'll be very brief and specific. If I could direct you to Appendix 100, I'd like to address this issue of the conflict in the board's decision, because my colleague on the other side tried to articulate a path by which there's a difference between the petition's theory of unpatentability and what's disclosed in the 849 patent. And in fact, the petition itself says exactly otherwise. The petition says, likewise, the 849 patent describes that the intra-prediction, according to an example embodiment of the present invention, selects the intramode of the current block on the basis of the directionality of the neighboring blocks. That's their building that have already been reconstructed. And they cite to Columns 6, 9, 19 to 23. Thus, in the context of the 849 patent, opposed it, I would have understood that determining an intramode for a neighboring block is satisfied by determining the directionality of the neighboring block. And they cite to their own expert. Then they say, Kalevo describes the same, not different, the same determination of the So there is no daylight between these two. The board's decision on this issue is inconsistent. And if we take a look at Column 6 of the patent, in addition to the passage in Column 5 that Joe Stoll cited, it says in detail, Column 6, excuse me, at line 11, for instance, in detail, an example embodiment of the present invention employs a method of selecting the one of the neighboring blocks that have already been reconstructed. And in Column 2, and elsewhere in the patent repeatedly, for example, at line 16, it refers to the methods of H.264, which was a very well-known video encoding technique. It's the standard, essentially, for HD video, H.264. And the consequence of the board's finding of lack of written description support is that this embodiment of the patent, which is in the very title of the patent, gets excluded from the scope of Claim 1. That Claim 1 apparently doesn't cover the embodiment of the title of the patent, the embodiment that's all throughout the patent, and the embodiment that- Did you cite the title to the board? I mean, I'm just wondering. When I looked at your papers, I do see you relying on the book for an embodiment. Did you make- I think you're making these arguments about the title in Column 5, 6, and 7 for the first time on appeal. Am I right? Your Honor, I was not counsel below. But I think that the issue was that, as I read the record, that there was so much clarity from the board in that preliminary guidance that the written description was there, that there wasn't a feeling of a need to go further to point to every possible place where it could additionally be found. Thank you, Your Honor. Okay. Thank both counsel. The case is taken under submission.